(53 App. Div. 453.)

In re TOBIN.

(Supreme Court, Appellate Division, Second Department.   July 17, 1900.)

MUNICIPAL CORPORATIONS—FIRE DEPARTMENT—WIDOWS' AND ORPHANS' RELIEF
FUND—MANDAMUS—STATUTES.
    Act 1888, tit. 13, § 15, enacts that the comptroller "shall" deduct $1 from
the monthly pay of each fireman, which shall constitute the fire depart-
ment widows' and orphans' relief fund, $500 of which shall be paid to the
widow of a deceased contributing member. Laws 1889, c. 153, amends
Act 1888, tit. 13, § 15, by increasing the allowance to the widow to $1,000,
and providing for a monthly deduction of $1 from the pension allowed re-
tired firemen, to become a part of the widows' and orphans' relief fund,
and directs the commissioner of the fire department to cause the trustees
of the widows' and orphans' relief fund to pay from the fund to the widow
of a deceased retired pensioner of the department such sum of money as
the widow would have been entitled to if the deceased member had not
been retired. Held, that the fact that at the time of a fireman's retirement,
after 10 years of membership, he notified the secretary of the department
and of the widows' and orphans' relief fund that he did not desire his
wife to receive anything from the fund, but desired his interest in the
fund to lapse, and received his pension until his death without any deduc-
tion, will not deprive the widow of the right to participate in the fund,
since the rights of the widow were not dependent on the ability or willing-
ness of the pensioner to continue his contributions to the fund.

Appeal from special term, Kings county.

Application of Margaret Tobin for a writ of mandamus against
John J. Scannell, fire commissioner of the city of New York. Plain-
tiff appeals from an order denying the application. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD,
and HIRSCHBERG, JJ.

Eugene V. Brewster, for appellant.
William J. Carr (Luke D. Stapleton, on the brief), for respondent.

HIRSCHBERG, J.   The relatrix is the widow of John J. Tobin,
who died on the 6th day of April, 1896.   He had been a member of
the uniformed force of the fire department of the city of Brooklyn for
more than 10 years, and on the 1st day of November, 1895, was retired
on pension.   The relatrix's application was for a peremptory writ of
mandamus requiring the respondent, John J. Scannell, as fire com-
missioner of the city of New York, to pay to her the sum of $1,000
from the Brooklyn fire department widows' and orphans' relief fund,
pursuant to section 15 of title 13 of the charter of the late city of
Brooklyn (chapter 583, Laws 1888, as amended by chapter 153, Laws
1889), and which fund, by virtue of the provisions of the charter of
the city of New York (chapter 378, Laws 1897), is now embraced in,
and a part of, the New York fire department life insurance fund, of
which the respondent is trustee.   By the latter charter the obliga-
tions and duties are also transferred with the fund.   The relatrix's
application was successfully resisted on the ground that her husband
at the time of his retirement had notified the then secretary of the
fire department of the city of Brooklyn, and acting secretary of the
trustees of the Brooklyn fire department widows' and orphans' relief
fund, that because of his relations with his wife he did not desire her

to receive anything, as his widow, from the fund, but wished whatever interest he had in the fund to lapse. During the few months between his retirement and death he accordingly received his pension, without any deduction being made therefrom for the benefit of the fund; and it is claimed by the respondent, and was apparently held by the court at special term, that the voluntary withdrawal by the deceased at the time of his retirement from future participation in the fund operated to destroy and defeat any right therein which the relatrix would otherwise have had. I am of opinion that the relatrix is entitled to the money. By the provisions of sections 14 and 15 of title 13 of the Brooklyn charter, as constructed by the consolidation act of 1888, supra, two distinct funds were created,—one known as the "Firemen's Insurance Fund," and the other as the "Brooklyn Fire Department Widows' and Orphans' Relief Fund." The firemen's insurance fund was to be made up from fines imposed upon members of the department by way of discipline, and collectible from pay or salary; from rewards, fees, proceeds of gifts and emoluments on account of extraordinary services of any member of the department; from moneys received for penalties; and from the percentage or tax on the receipts of the foreign fire insurance companies doing business in the city of Brooklyn. The provisions for the creation of this fund are embodied in section 14, and it is apparent that no regular voluntary contribution towards it is contemplated on the part of any officer or member of the force, and that the only way such persons could contribute to it was by being subjected to the imposition of fines or penalties, or by earning a reward by the rendition of extraordinary services,—a contribution which could only be made in either case by an officer or member in active service. By section 15 of title 13 of the act of 1888 it was provided that any officer or member of the department who should become permanently disabled while in the performance of duty, or who after 10 years' membership should become superannuated by age or rendered incapable of performing duty by disease, might be placed on the pension roll of the firemen's insurance fund, and granted and paid a pension from the fund of not exceeding one-half his salary. The section further provided that there "shall be deducted by the comptroller of the city of Brooklyn, from the monthly pay of each officer and fireman of said department, and from that of the other employés of the said department, as shall desire to avail themselves of this provision, the monthly sum of one dollar, which shall be received and held by the trustees of the insurance fund herein created, in the like manner as the other moneys herein provided to be paid to them, and which shall be known as the Brooklyn Fire Department Widows' and Orphans' Relief Fund; and in the case of the death of any member or employé of said department in the service thereof, and so contributing, there shall be paid to the widow or legal representative of such deceased member or employé, the sum of five hundred dollars out of the money so assessed." By the provisions of this section it is apparent that the Brooklyn fire department widows' and orphans' relief fund was made up wholly from monthly deductions from salary, compulsory so far as concerned the officers and firemen of the department, and optional with re-

spect to the other employés. But no assessment was provided for against a retired pensioner, and payable out of his monthly pension. It necessarily follows that the widow of a retired pensioner, from whose salary before retirement the monthly deduction had been made, would have been entitled to payment out of the fund, notwithstanding her husband made no contribution to the fund after his retirement; and this must still be the law, unless the amendments made in 1889, supra, effected a change.

I can see nothing in the amendments made to section 15 of title 13 by chapter 153 of the Laws of 1889 which discloses an intention to deprive the widow of a retired pensioner of the benefit of this fund. On the contrary, the intention of the amendments to confirm and strengthen her rights seems very manifest. By the amendments the amount of the payment to the widow was increased to the sum of $1,000, and provision was made, in addition to the monthly deductions already referred to and provided for, for a deduction by the trustees of the firemen's insurance fund of $1 from the monthly pension of such retired members of the department as had contributed to said fund before retirement; the amount so deducted to become a part of the widows' and orphans' relief fund. It is not clear whether the words "said fund" refer to the firemen's insurance fund or the widows' and orphans' relief fund, nor is it very material to the decision of this case. If they refer to the insurance fund, there is nothing in the record to indicate that Tobin, before his retirement, contributed anything to that fund, and consequently there would be no legislative authority for subsequently deducting anything from his monthly pension. If, however, the words refer to the widows' and orphans' fund, as seems most probable, then it was the duty of the trustees of the firemen's insurance fund to deduct $1 from Tobin's pension in each of the four months between his retirement and his death, and their failure to do so cannot deprive the widow of her rights under the law. It is not pretended that Tobin ever notified these trustees that he desired to cease contributing to the fund. I do not find any warrant in the statute for the suggestion that it is optional with the pensioner whether he will continue to be interested in the fund, or that he might at will waive or destroy his widow's future interest therein. The statute as amended retains the same provision as that contained in the original section, by virtue of which the contributions only of employés other than officers and firemen were dependent on a desire to avail themselves of the provision of the law. But the contributions of the officers and firemen, and of such of the retired pensioners as are included in the provision, are compulsory, and must be deducted from pay and pension for the benefit of the fund, irrespective of the wishes of the parties. The statute, as amended (Laws 1889, c. 153), reads:

"There shall be deducted by the comptroller of the city of Brooklyn, from the monthly pay of each officer and fireman of said department, and from that of the other employees of said department, as shall desire to avail themselves of this provision, and by the trustees of the firemen's insurance fund from the monthly pension of such retired members of the department who had contributed to said fund before retirement, the monthly sum of one dollar," etc.

The phrase, "as shall desire to avail themselves of this provision," relates only to the other employés, and not to the officers and firemen, and certainly not to the retired members of the department. The object was to compel those who were exposed to the hazards of active service, or who had become incapacitated for remunerative employment, to provide a fund for their widows and orphans, and to leave it optional to do so, or not, as they might see fit, with those employés who were not exposed to danger, and were capable of earning a living. But, whatever view is taken of the statute as discussed, a final amendment to section 15 by chapter 153 of the Laws of 1889 would seem to place the relatrix's right beyond all question. As so amended, and as if to confirm the claim of the widow of a retired pensioner to payment out of the fund, quite independently of her husband's contributions after retirement, the section provides that:

"The said commissioner of the fire department of the city of Brooklyn may direct the trustees of the Brooklyn fire department widows' and orphans' relief fund to pay from said fund to the widow of any deceased retired pensioner of said fire department who had contributed to said fund previous to his said retirement, and who, by reason of said retirement, was debarred from further contributing to or receiving any of the benefits of said fund, such sum of money as the widow of said retired pensioner would have been entitled to receive if said retired pensioner had not been retired from said fire department at the time of his death."

It is a familiar rule that where a statute clothes a body or officer with power to do an act which concerns the public interests or the rights of individuals, though the language of the statute be permissive, merely, it will be construed as imperative, and the execution of the power may be insisted upon as a duty. In such cases the word "may" is construed as "must." People v. Otsego Co. Sup'rs, 51 N. Y. 401; Phelps v. Hawley, 52 N. Y. 23; Hagadorn v. Raux, 72 N. Y. 586; Smith v. Floyd, 140 N. Y. 337, 342, 35 N. E. 606. It is unnecessary, however, to construe the section cited as mandatory, and as requiring the payment to be made in every instance to the widow of a retired pensioner. It is quite sufficient for the purposes of this decision that the rights of the relatrix were unquestioned in the condition of the law before the amendment; that, as the law then existed, the widow of a retired pensioner was entitled to payment of the benefit sum, although the pensioner made no contribution to the fund from his pension money; and that the amendment cited is a very strong manifestation that the intention of the legislature was not to impair the rights of the widow of the pensioner, or to make them dependent upon either his ability or his willingness to continue his contributions to the fund after his retirement. The order should be reversed, and the motion for a peremptory writ granted.

Order reversed, with $10 costs and disbursements, and motion for peremptory writ of mandamus granted. All concur, except BARTLETT, J., not voting.