(64 App. Div. 375.)

## TOBIN v. SCANNELL, Fire Com'r.

(Supreme Court, Appellate Division, Second Department.    October 4, 1901.)

MUNICIPAL CORPORATIONS—FIRE DEPARTMENT—PENSIONS—MANDAMUS.

 Brooklyn City Charter, tit. 13, § 15 (Laws 1888, c. 583, as amended by Laws 1889, c. 153), and Greater New York Charter (Laws 1897, c. 378), provide that, if any member of the fire department dies after 10 years' continuous service, or after retirement from the actual service, his widow may be placed on the pension roll so long as she remains unmarried, and that the commissioner shall determine the circumstance thereof, but the payment of such pension shall not be obligatory on him, and that he, in his discretion, for proper cause, after investigation, may at any time order such pension, or any part of it, to cease. *Held*, that on application of a widow of a deceased fireman, stating the commissioner's refusal to place her name on the rolls, and setting forth facts prima facie entitling her to be placed on the list, in the absence of such circumstances, lawfully determined by the commissioner, as render it improper for her to receive a pension, an alternative writ of mandamus may issue requiring the commissioner to determine her claim, and place her name on the pension list, or to show cause to the contrary.

 Goodrich, P. J., dissenting.

Appeal from special term, Kings county.

Mandamus by Margaret Tobin against John J. Scannell, as fire commissioner of New York City and trustee of New York fire department pension fund, to require the placing of her name on the pension list of the firemen's insurance fund. From an order denying the application, applicant appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Eugene V. Brewster, for appellant.

William J. Carr (Luke D. Stapleton, on the brief), for respondent.

HIRSCHBERG, J. John J. Tobin, the husband of the appellant, was a fireman in the fire department of Brooklyn for more than 10 consecutive years prior to November 30, 1895, when he was retired upon a pension. He died on April 6, 1896. By the provisions of section 15, tit. 13, of the charter of Brooklyn (Chapter 583, Laws 1888, as amended by chapter 153, Laws 1889), two funds were created,—one a "Firemen's Insurance Fund," made up of fines, rewards, fees, donations, and the percentage or tax on foreign insurance companies. Tobin received his pension from this fund. The other fund was made up from monthly deductions from the pay and pensions of members of the fire department, and was known as the "Brooklyn Fire Department Widows' and Orphans' Relief Fund," and from the money so assessed the sum of $1,000 was required to be paid, by the terms of the act, to the widow of such retired pensioner. The provisions referred to have been substantially re-enacted in the Greater New York charter (chapter 378, Laws 1897), and the administration of both funds is committed to the respondent, the fire commissioner of the city of New York, as the trustee of the New York fire department relief fund, without material change, however, as to the rights of persons claiming benefits therefrom. After the death of her husband, the appellant applied for the pension of $1,000 from the widows' and orphans' relief fund, but was refused payment on the ground that her husband had ceased, during the few months of his retirement, to contribute to that fund; but in the litigation which resulted it was held that her right to such pension was absolute. In re Tobin, 53 App. Div. 453, 66 N. Y. Supp. 97, affirmed in 164 N. Y. 532, 58 N. E. 650. Within two weeks after the decision was announced in the court of appeals, the appellant requested the respondent in writing to place her name upon the pension list of the firemen's insurance fund as of the date of her husband's death, and was informed in answer and in writing that the respondent declined to act favorably upon her request. She thereupon obtained an order requiring the respondent to show cause why a writ of peremptory mandamus should not issue commanding such action on his part, and on the return of such order, upon her petitioning affidavit and the answering affidavit of the respondent, the order appealed from was granted, denying her motion in all respects.

The portion of section 15, hereinbefore referred to, which is applicable, and which refers only to the fund accumulated from other sources than the contributions of members of the department, is as follows:

"If any * * * member of the department * * * shall die after ten continuous years in the service of the department, * * * or shall die after having been retired from actual service, leaving a widow, the name of such widow may be placed on such pension roll, and there may be granted and paid to said widow a pension of three hundred dollars per year, from said fund, so long as she remains unmarried. * * * In every case the commissioner shall determine the circumstances thereof, * * * but nothing herein contained shall render any payment of said pension obligatory upon the said commissioner, * * * or chargeable as a matter of legal right upon the said firemen's insurance fund. The commissioner or commissioners of the fire department, in his or their discretion, for proper cause, and after investigation, may at any time order such pension, or any part thereof, to cease."

We are not now called upon to determine whether the word "may" is used generally in the foregoing extract in the sense of "must," or when and in what cases, if any, it may be so construed. On the face of the statute it is made the duty of the commissioner to inquire into and to determine the circumstances of each case, and it may be fairly assumed that both in placing names upon the pension list and in subsequently striking them therefrom the law anticipates that his action shall be governed by the facts as established and determined upon investigation. It may be further assumed, in view of the nature and object of the fund and the beneficent purposes it is designed to subserve, and in the additional light afforded by the language of section 791 of the Greater New York charter, that the law contemplates that every needy and deserving widow within the scope of its terms shall receive the benefit of its provisions. Every such widow is interested in the due and lawful administration of the trust which the legislature has reposed in the respondent, and as such has at least an equitable claim to fair consideration on the merits, and an equitable right and interest in the fund itself, as distinguished from an absolute legal right to any sum or in any fixed result. Nor are we now called upon to decide whether, or how far, the action of the respondent may be reviewed by the courts, or whether such action, if subject to judicial scrutiny, may be reviewed by writ of mandamus. We think that on the record the plaintiff was entitled to require that the respondent should act upon her application in accordance with the provisions of the statute, to the end that, if aggrieved, she might intelligently take such steps for redress as the law may afford.

In her petition she sets forth such facts as prima facie entitle her to be placed upon the list, in the absence of such circumstances, lawfully determined by the respondent, as shall render it improper or inexpedient for her to receive a pension. She could not anticipate or negative the possible, but unknown, grounds of the rejection of her application; nor is she required to do so by any obvious analogy to the general rules of practice. In his answering affidavit the respondent alleges that the appellant's application is too late; that she has received the fund which the decision of the courts already mentioned required should be paid her; that her husband was retired because he had consumption; and that he, the respondent, in the exercise of his best judgment and discretion, "declined to place petitioner upon the roll of the New York fire department relief fund, or of the firemen's insurance fund of the former city of Brooklyn."

None of these allegations meets the case. The payment of money from the widows' and orphans' relief fund, accumulated by contributions from members' wages, was a right to which each widow of a contributing member is entitled, and has no relation whatever to the pension fund, provided from other independent sources for the widows of those who have seen long service, or have died in enforced retirement. The suggestion of laches on her part or of the nature of her husband's disease as a defense has not been seriously urged upon the appeal, and does not merit extended consideration. The statement that the respondent declined to place the appellant upon the roll is scarcely an amplification of the previous written rejection, notwithstanding it is alleged to have been done in the exercise of judgment and discretion. There is no allegation or suggestion that the respondent has in any way determined the circumstances of the petitioner's case; still less a disclosure of the facts in relation thereto; and therefore nothing whereby the appellant could be apprised of the grounds of her rejection, or even of the rejection itself as a lawful fact,—nothing, in short, which she could intelligently traverse, or which would enable her, if a needy and worthy beneficiary of the fund, to seek a remedy either in law or in equity. The distribution of the pension fund is surely not a matter of choice or favor. Only upon the theory that the respondent may place upon the list those whom he desires so to place, and may leave all others off at will, without regard to their circumstances and surroundings, can his mere statement of rejection be regarded as conclusive; and such a theory is as repugnant to our notions of equity and justice as it is foreign to the letter and spirit of the statute and to the comprehensive and equable scope and purpose of the benefaction.

It by no means follows that the appellant is entitled to a peremptory writ in the first instance, and having regard to the limitations of the judicial inquiry and authority in this class of special proceedings it may be that the facts will disclose that she has no ultimate right to it. An alternative will, however, afford opportunity for an investigation and determination of the rights of both parties, so far as they can be investigated and adjusted by mandamus. The order appealed from should accordingly be reversed, and an alternative writ issued commanding the respondent to determine the circumstances of the appellant's application and claim, and to place her name on the pension roll, and pay her the pension from the time of her husband's death, or to show cause to the contrary, in accordance with the rules of practice applicable to the case. All concur, except GOODRICH, P. J., who dissents.

GOODRICH, P. J. (dissenting). This appeal requires a construction of the language of section 15 of title 13 of the former charter of the city of Brooklyn, as amended by chapter 153 of the Laws of 1889, and a decision as to whether the word "may," as therein used, is tantamount to "must." The relator is the widow of John Tobin, who died November 1, 1895, and who, after having been for more than 10 years a member of the fire department of Brooklyn, had been retired upon a pension, in accordance with the provisions of the sec-

tion in question. She applied for a peremptory writ of mandamus to compel the fire commissioner to pay her the sum of $1,350, the amount of pension already accrued since the death of her husband, to place her name on the list of those entitled to pensions, and to pay her $300 annually until her death or remarriage. The provision of section 15, so far as important to our discussion, reads as follows:

"If any * * * member of the department * * * shall die after ten continuous years in the service of the department, * * * or shall die after having been retired from actual service, leaving a widow, the name of such widow may be placed on such pension roll, and there may be granted and paid to said widow a pension of three hundred dollars per year, from said fund, so long as she remains unmarried. * * * 'In every case the commissioner shall determine the circumstances thereof, * * * but nothing herein contained shall render any payment of said pension obligatory upon the said commissioner, * * * or chargeable as a matter of right upon the said firemen's insurance fund. The commissioner or commissioners of the fire department, in his or their discretion, for proper cause and after investigation, may at any time order such pension, or any part thereof, to cease."

By section 791 of the Greater New York charter the relator is entitled to receive from the respondent commissioner the same amounts to which she would have been legally entitled prior to its passage from any pension or relief fund theretofore existing in the city of Brooklyn. The relator contends that the word "may" is to be construed as "must," and calls the attention of the court to its previous decision in Re Tobin, 53 App. Div. 453, 66 N. Y. Supp. 97, affirmed in 164 N. Y. 532, 58 N. E. 650, in which, Mr. Justice Hirschberg writing, it was said (page 458, 53 App. Div., and page 100, 66 N. Y. Supp.):

"It is a familiar rule that, where a statute clothes a body or officer with power to do an act which concerns the public interests or the rights of individuals, though the language of the statute be permissive merely, it will be construed as imperative, and the execution of the power may be insisted upon as a duty. In such cases the word 'may' is construed as 'must.' [Citing cases.]"

This language was used with reference to the question then before the court; i. e. that the enforced deduction of one dollar monthly from the pay of a member of the department entitled his widow to the pension, notwithstanding the fact that her husband, after a time, had refused to submit to, and had not been compelled to pay, further monthly deduction. This related to a different part of the section from that now under consideration, and does not affect our present discussion. There are numerous decisions sustaining the doctrine stated by Mr. Justice Hirschberg; among them Hutson v. City of New York, 9 N. Y. 163, 59 Am. Dec. 526, and People v. Board of Sup'rs of Otsego Co., 51 N. Y. 401. But in cases where an individual is concerned it is a legal right that is referred to. In the present proceeding the question is whether the relator has an absolute legal right to the pension. If she has, the word "may" must be construed as meaning "must." If she has no such absolute right, then the court is not bound by authority so to construe it. Resort must be had to the language of the statute to ascertain whether a positive duty to pay the pension in question is imposed upon the com-

missioner. The language seems to me such that discretionary power to pass upon the right to a pension is conferred upon the commissioner. He is authorized to "determine the circumstances thereof." Even if it should be held that these words were not sufficient to show the conferment of discretionary power, the section goes further, and expressly declares that "nothing herein contained shall render any payment of said pension obligatory, * * * or chargeable as a matter of legal right" upon the fund. It is only when a positive duty, as distinguished from a discretionary power, is intended to be imposed, that the word "may" is to be construed as "must." Hagadorn v. Raux, 72 N. Y. 583. Inasmuch as the statute confers upon the commissioner discretionary power, not only as to the original granting of the pension, but also as to terminating it when circumstances render that conclusion proper, I am led to the conclusion that the relator had no absolute legal right to the pension, and consequently that "may," in the section referred to, must be given its plain and ordinary meaning. The petitioner, having no absolute right to the pension, was bound to prove affirmatively conditions and facts upon which, in justice and in accordance with the purpose and intent of the act, she ought to receive the pension. It appeared by the return that her husband was retired from the department in November, 1895, on account of his having phthisis pulmonalis, that he died in April, 1896, and that he received a pension from the fire department up to the time of his death. It also appeared that the petitioner had received $1,000 out of the fire department widows' and orphans' relief fund, but it did not appear that she was in destitute circumstances, or required the pension for her support. It must be presumed that the commissioner, being a public officer, did not act arbitrarily in the exercise of his discretion. Every public officer is presumed to have done his duty. I do not mean to be understood as declaring that this court may not, in a proper case, review the action of the commissioner, and ascertain whether or not he has fairly exercised the discretion conferred upon him by the statute. In the present proceeding I cannot say that the commissioner, upon the facts before him, did not exercise a fair discretion and come to a just conclusion. I think that the order should be affirmed.