In the Matter of LAKE PLACID CLUB, INC., Respondent, against CHARLES ABRAMS, Individually and as Chairman of the New York State Commission against Discrimination, et al., Appellants.

Third Department, November 10, 1958.

*Henry Spitz* and *Solomon J. Heifetz* for Charles Abrams, individually and as Chairman of the New York State Commission against Discrimination, appellant.

*Sol Rabkin, Paul Hartman* and *Arnold Forster* for Blanche I. Lubow, appellant.

*Morris, Dillon & Mac Harg* (*Ernest B. Morris* of counsel), for respondent.

FOSTER, P. J. By statute discrimination based on race, color, creed or national origin is forbidden in this State in places of public accommodation, resort or amusement. Private clubs are excepted from the ban of the statute (Executive Law, §§ 292, 296). A commission has been set up to enforce the provisions of the statute and such commission is empowered to establish its own rules of practice. This appeal brings up for determination the power of the chairman of the commission to waive strict compliance with one of the rules of the commission relative to the reconsideration of a decision made by one commissioner.

In May, 1955 the commission initiated an investigation of the admission policy of the petitioner Lake Placid Club, Inc., to determine whether it is a place of public accommodation within the purview of the statute, and assigned a commissioner for that purpose. During the pendency of the proceeding the Anti-Defamation League of B'nai B'rith filed a complaint against petitioner on behalf of appellant Lubow charging petitioner with a discriminatory practice against her based on her creed. This complaint was also assigned to the same commissioner and became part of the proceeding aforesaid. After an investigation such commissioner found that petitioner was not a place of public accommodation, resort or amusement within the contemplation of the statute. While we do not reach the merits of that issue on this appeal it may be parenthetically observed that the controversy hinged upon the propositions that two entities were involved, the petitioner Lake Placid Club, Inc., and the

Lake Placid Company; and upon the fact that conventions were entertained on the premises of the petitioner with the use of its facilities.

A copy of the decision of the commissioner dismissing the complaint was mailed to appellant Lubow on July 18, 1957, but no copy was mailed to the B'nai B'rith although concededly it was the usual practice of the commission to furnish a copy of its determination to organizations when they acted in behalf of complainants. On the day after the decision was mailed the term of office of the commissioner who made the decision expired. On July 22, 1957 B'nai B'rith attempted to get a copy of the decision from the commissioner but did not receive one. On July 25, B'nai B'rith wrote to the chairman of the commission complaining of its failure to get a copy of the decision and requested an extension of time within which to advise appellant Lubow whether to seek reconsideration. The chairman was out of the country and apparently no one was authorized to act on his behalf during his absence. Upon August 21 he returned and a short time thereafter he determined that B'nai B'rith's letter requesting an extension of time was sufficient in form and substance to constitute an application for reconsideration. After receiving B'nai B'rith's memorandum on the subject he gave petitioner's counsel an opportunity to answer the same. No actual determination as to whether reconsideration should be had was made before petitioner instituted the proceeding under review, under article 78 of the Civil Practice Act to prohibit further action on the part of the chairman and the commission. It was decided at Special Term that B'nai B'rith's letter of July 25 was not an application for reconsideration; that the time to file such an application expired on August 6 and that the chairman had no authority to extend the time or waive the rule of the commission with relation to reconsideration. From the order entered thereon appellants have appealed.

The rule in question, adopted by the commission pursuant to its rule-making power as provided by statute, is rule No. 4, and reads as follows:

"4. Reconsideration by the chairman.

" The complainant may apply to the chairman for reconsideration of the dismissal of his complaint or of the terms of conciliation, as the case may be. Such application must be in writing, state specifically the grounds upon which it is based and be filed within 15 days from the date of the mailing of the notice of disposition in the office of the Commission where the complaint was previously filed.

" If such application for reconsideration is made, the Chairman shall review the entire file, and may, in his discretion, hear the parties. The Chairman, in his discretion, shall grant or deny the application for reconsideration. If the Chairman grants the application for reconsideration, he shall remit the matter, together with his recommendations, to the Investigating Commissioner for further action, if any."

It should be noted that in his decision, mailed to appellant Lubow, the commissioner who made the determination stated the essence of the rule as to an application for reconsideration. It should also be noted that if it was error for the Special Term to find that the letter from B'nai B'rith of July 25 was not an application for reconsideration then there is no issue as to a waiver of the rule, for such letter was mailed well within the 15-day period stated in the rule. We prefer however to go to the larger issue of waiver, and to agree with Special Term that if the words used in the letter are accorded their ordinary meaning the letter merely requested an extension of time. The narrow issue is then presented as to the chairman's power to waive the time limit of the rule and to consider the request of September 13 for reconsideration. This request was made by B'nai B'rith some 57 days after the determination of the investigating commissioner was made.

There are cogent arguments for and against the power of waiver by administrative bodies of their own rules, apparently dependent upon the circumstances involved. Generally speaking rules of administrative agencies which regulate procedure affecting substantial rights of individuals may not be waived (*People ex rel. Jordan* v. *Martin,* 152 N. Y. 311; *Matter of O'Brien* v. *Delaney,* 255 App. Div. 385, affd. 280 N. Y. 697; *Matter of Jordan* v. *Wiener,* 259 App. Div. 1068; *Service* v. *Dulles,* 354 U. S. 363). Rulings which do not affect substantial rights of individuals, the waiver of which would not be prejudicial, may be relaxed when the ends of justice require it (*Matter of Molinari* v. *Quayle,* 300 N. Y. 55; *National Labor Relations Bd.* v. *Monsanto Chem. Co.,* 205 F. 2d 763; Davis, Administrative Law, § 56; Forkosch, Administrative Law, § 227).

We are constrained to the belief that no substantial legal right of petitioner by the action of the chairman of the commission was violated or impaired. Had the chairman been at home instead of abroad, or had delegated his duties to another commissioner, the letter from B'nai B'rith on July 25 would undoubtedly have been answered promptly, and had the requested extension been denied there still would have been time to apply for reconsideration before the expiration date of the

15-day period on August 6. Had such reconsideration been granted, petitioner could not validly have claimed prejudice; and, as we view it, no real prejudice to petitioner resulted from what actually occurred. The chairman's determination was simply to undertake whether reconsideration should be had, and in the event he grants it, petitioner is merely required to argue again that the complaint is unfounded. Even in civil suits, and under the Civil Practice Act and the Rules of Civil Practice, the courts have a rather wide latitude to relieve defaults in pleadings and in judgments and very liberal principles as to relief by the courts from time limitation are expressed in section 98 of the Civil Practice Act. These practices and principles we think should apply with even greater force to proceedings before an administrative and quasi-judicial officer, like the chairman of a commission, where the commission is charged with the enforcement of a public policy formally adopted by the State. We do not regard the application for reconsideration as akin to a notice of appeal from a judgment or order in a civil action with the finality which a failure in that regard portends. We are therefore also constrained to hold that on the broad issue of waiver the chairman of the commission for good cause, and especially under the circumstances disclosed, had power to waive strict compliance with rule No. 4 of the commission, and to entertain the application for reconsideration. We express, of course, no opinion as to the merits of the application for reconsideration but we may also add that if reconsideration is granted, and despite the fact that the commissioner who decided the matter is now out of office, it is our view that the chairman has implied power under the rule to remit the matter to another commissioner.

The order should be reversed and the proceeding dismissed.

BERGAN, GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Order reversed, with $10 costs, and the proceeding dismissed.